**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RICHARD PEEPLES, RUTH
NELSON-PEEPLES, US COASTAL
PROPERTY AND CASUALTY INSURANCE
COMPANY, a/s/o Richard Peeples and Ruth
Nelson-Peeples,

        Plaintiffs,

v.                                   Case No. 3:20-cv-5-J-34JRK

OMEGA FLEX INC.,

        Defendant.

## REPORT AND RECOMMENDATION[1]

### I. Status

This cause is before the Court on Omega Flex, Inc.'s Rule 12 Motion to Dismiss Counts III, IV, and V of Plaintiffs' Complaint and Motion to Strike Plaintiffs' Demand for Attorney's Fees (Doc. No. 7; "Motion"), filed January 24, 2020. Plaintiffs responded in opposition to the Motion on February 7, 2020. See Plaintiffs' Response to Defendant's Motion to Dismiss (Doc. No. 9; "Response"). On April 6, 2020, the Honorable Marcia Morales Howard, United States District Judge, referred the Motion to the undersigned for a report and recommendation regarding an appropriate resolution. See Order (Doc. No.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

26). Having considered the procedural posture of the case, the Motion, and all relevant matters, the undersigned recommends that the Motion be granted to the extent that Counts III and IV be dismissed without prejudice and that the Motion be otherwise denied.

## II. Procedural History/Background

Plaintiffs originally filed this case in state court on December 3, 2019. See Defendant Omega Flex Inc.'s Petition and Notice of Removal (Doc. No. 1; "Notice of Removal") at Ex. 1 (Doc. No. 1-1), filed January 2, 2020; Complaint for Declaratory and Injunctive Relief, Costs, Damages, and Demand for Jury Trial (Doc. No. 3; "Complaint") and attached exhibits (Doc. Nos. 3-1 to 3-4), filed January 3, 2020. Defendant removed the matter to this Court on January 2, 2020. See Notice of Removal. Thereafter, the Motion was filed. The allegations in the Complaint are summarized below.

Defendant manufactures and distributes propane gas distribution systems consisting of corrugated stainless steel tubing ("CSST") ("CSST system(s)"). Complaint at 2 ¶ 3, 3 ¶¶ 11-12. One of Defendant's CSST systems, sold under the brand name "CounterStrike," was installed in the home of Plaintiffs Richard Peeples and Ruth Nelson-Peeples[2] ("the Home"). Id. at 3 ¶ 12.

On or around August 30, 2019, after the CSST system was installed in the Home, "the area where the [Home] was located, experienced an electrical storm of routine and foreseeable intensity and duration for the region." Id. at 4 ¶ 14. During the storm, "lightning struck a tree in the vicinity of the Home." Id. ¶ 15. "The energy from the lightning strike, in attempting to travel to the ground, migrated to an aluminum fence near the tree" and "ultimately ran up to the side of the [Home] where a run of CSST was located." Id. ¶ 16.

---

[2]   The undersigned refers to Mr. Peeples and Mrs. Nelson-Peeples as the Peeples.

"The energy from the lightning strike then arced to [the] CSST [system], causing a perforation in it, which released and ignited the escaping propane gas." Id. ¶ 17. The perforation in the CSST system caused an explosion and a fire that "substantially damaged [the Home] and [the Peeples's] personal property." Id. at 4-5 ¶¶ 18, 21.

The Peeples made claims to their homeowner's insurance carrier, Plaintiff U.S. Coastal Property and Casualty Insurance Company ("U.S. Coastal"). Id. at 5 ¶ 21. U.S. Coastal "has paid on these claims to the extent of its obligations under the Homeowner's Policy, in excess of $500,000, for the severe damage to the [H]ome, the contents, and other damages." Id.

The Complaint asserts five counts against Defendant. See Complaint at 7-19.[3] At issue here are the following counts: Breach of Express Warranty (Count III); Breach of Implied Warranty of Merchantability (Count IV); and Consumer Fraud Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V). See id. at 11-19.[4] These counts are addressed below. As relief, Plaintiffs seek declaratory and injunctive relief; actual, compensatory, and punitive damages (plus interest, if applicable); attorney's fees; and costs. Id. at 2 ¶ 4, 19.

### III. Motion and Response

In the Motion, Defendant requests that the Court 1) dismiss Counts III, IV, and V for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure ("Rule(s)") and 2) strike Plaintiffs' claim for attorney's fees. Motion at 1,

---

[3] The Complaint labels the last count as Count IV in error.

[4] The other two counts in the Complaint are Negligence, Gross Negligence, Willful and Wanton Conduct (Count I) and Strict Product Liability in Tort (Count II). See Complaint at 7-11.

- 3 -

9-14.[5] As to Counts III and IV, Defendant asserts that Plaintiffs do not allege privity of contract, "a necessary element for a warranty claim." Id. at 1, 4; see id. at 9-10. Defendant contends Count V is due to be dismissed because it fails to meet the heightened pleading standard of Rule 9(b). Id. at 11-13. Defendant argues that Plaintiffs' request for attorney's fees should be stricken because if Count V is dismissed, Plaintiffs "do not allege a specific statute or contractual provision that entitles them to this requested relief as required by Florida law." Id. at 2; see id. at 13-14.

Responding, Plaintiffs contend that "Florida law does not mandate privity to pursue either express[ ] or implied warranties." Response at 5; see id. at 5-10. As to Count V, Plaintiffs argue that Rule 9(b) does not apply to FDUTPA claims. Id. at 12. Plaintiffs do not address Defendant's argument regarding their request for attorney's fees, evidently because they believe that Count V should not dismissed.

## IV. Discussion

### A. Applicable Standard

In reviewing and deciding a motion to dismiss for failure to state a claim premised on Rule 12(b)(6), "the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted); see also Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla., 692 F.3d 1200, 1201 (11th Cir. 2012) (in reviewing an order on a motion to dismiss, stating that the Court "take[s] as true the facts alleged in [the] complaint and attached exhibits" (citation omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[5] For ease of reference, citations to the Motion follow the pagination assigned by the Court's electronic filing system (CM/ECF).

- 4 -

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Darrisaw v. Pa. Higher Educ. Assistance Agency, 949 F.3d 1302, 1303 (11th Cir. 2020). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Iqbal, 556 U.S. at 678 (citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (citation omitted). A plaintiff's factual allegations, even though taken as true and in the light most favorable to the plaintiff, must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556.

**B. Analysis**

**1. Breach of Express Warranty (Count III)**

"The privity requirement in Florida warranty claims is a moving target which depends on factors including whether the warranty is express or implied and the type of injury alleged." Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1342 (S.D. Fla. 2009). In cases involving claims for breach of express warranty, there is "no clear rule about whether privity is required . . . ." Godelia v. Doe 1, 881 F.3d 1309, 1321 (11th Cir. 2018).[6] Some courts have recognized that a claim for breach of express warranty fails if the plaintiff did not purchase the product directly from the defendant. See, e.g., Kaiser v. Depuy Spine, Inc., 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013); Timmons v. Purdue Pharma Co., No.

---

[6] The Eleventh Circuit did not decide the issue in Godelia because it found that even if it assumed privity is required, the plaintiff had sufficiently alleged it. See Godelia, 881 F.3d at 1321-22.

- 5 -

8:04-cv-1479-T-26MAP, 2006 WL 263602, at *5 (M.D. Fla. 2006) (unpublished); T.W.M. v. Am. Med. Sys., Inc., 886 F. Supp. 842, 844 (N.D. Fla. 1995). Other cases, discussed below, have concluded that the privity requirement may be satisfied in certain circumstances even if the defendant did not sell the product directly to the plaintiff.

In In re Bob Rigby, Inc., 62 B.R. 900, 902 (Bankr. M.D. Fla. 1986), the plaintiff purchased a portable rock crushing machine (manufactured by the defendant) from a third-party distributor. Citing Article 2 of the Uniform Commercial Code as adopted by Fla. Stat. § 671.101 et seq., the court found it was "without significance" that the defendant was not the "actual seller" of the product at issue. Bob Rigby, 62 B.R. at 906. The court explained that "Fla. Stat. § 672.313 does not limit express warranty to the actual seller in spite of the fact that a literal reading of the Section might so indicate, but also extends the same to the manufacturer of the goods if, in fact, an express warranty arose by virtue of other means described in the Statute." Bob Rigby, 62 B.R. at 906 (citation omitted).[7] (The court ultimately found that the defendant was not liable because the plaintiff did not establish the existence of an express warranty. Id.)

In Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of Am., Inc., 444 So. 2d 1068, 1069 (Fla. 3d DCA 1984), a hospital brought claims for breach of express and implied warranties against the manufacturer of x-ray machines that the hospital had

---

[7]   Fla. Stat. § 672.313 provides in relevant part the following:

Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

Fla. Stat. § 672.313(1).

- 6 -

purchased through a third-party dealer. The court found that even though the hospital did not purchase the equipment directly from the manufacturer, the hospital established privity (for both the express and implied warranties) because the manufacturer's sales representative "called upon" the hospital to "ma[k]e direct representations" about the quality and capabilities of the x-ray machines, and the hospital relied on these representations when purchasing the equipment. Id. at 1072. The court specifically observed that it was "focusing on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exist[ed] in th[e] case." Id. n.4. The court noted that "[h]ad there been no direct contact between the two parties, [the manufacturer's] contention that there was no privity, and thus no liability for breach of warranties, would be correct." Id.

In Smith, 663 F. Supp. 2d at 1337-38, the plaintiff sued a manufacturer of chewing gum for breach of express warranty alleging that the gum packaging contained misleading statements. Like in Cedars, the plaintiff did not buy the product (gum) directly from the manufacturer. See Smith, 663 F. Supp. 2d at 1341. Recognizing that "a degree of uncertainty persists" in the law regarding express warranties, the court concluded that it "need not resolve the issue of whether privity is ever required for express warranty claims under Florida law" because the facts of the case lent themselves to a "straight-forward" analysis. Id. at 1342-43. The court sustained the plaintiff's claim for breach of express warranty, finding it "significant" that "the express warranty the manufacturer allegedly breached [was] contained on the packaging of [the defendant's] gum." Id. at 1343 (citation omitted). The court also noted the complaint "allege[d] that [the p]laintiff relied on the warranty when purchasing the gum." Id. (citation omitted).

In <u>Douse v. Bos. Sci. Corp.</u>, 314 F. Supp. 3d 1251, 1256-57 (M.D. Fla. 2018), the plaintiff brought claims for breach of express and implied warranties against the manufacturer of a medical device for injuries caused by the device. The plaintiff alleged that she "relied to her detriment on representations in the [manufacturer's] product brochure, website, and advertisements." <u>Id.</u> at 1261. The court recognized that "<u>Cedars</u> and <u>Smith</u> exhibit opposing interpretations of the outer boundaries of privity in Florida." <u>Douse</u>, 314 F. Supp. 3d at 1261. "The central issue" as identified by the court was "whether the outer boundaries of privity require substantial direct contacts, as in <u>Cedars</u>, or mere product labeling, as in <u>Smith</u>." <u>Douse</u>, 314 F. Supp. 3d at 1261. The court ultimately adopted the standard set out in <u>Cedars</u> and found that the plaintiff failed to allege viable claims for breach of express and implied warranties. <u>Douse</u>, 314 F. Supp. 3d at 1261-62. The court reasoned that "[t]he alternative of extending warranty liability to include product label representations would swallow the privity rule entirely." <u>Id.</u> at 1262 (citation omitted).

Other cases have similarly recognized that privity can be established if there are direct contacts between the manufacturer and the consumer. <u>See</u> <u>Davis v. Bos. Sci. Corp.</u>, No. 2:17-cv-682-FtM-38CM, 2018 WL 2183885, at *6 (M.D. Fla. May 11, 2018) (unpublished) (finding there was no privity because "[w]hereas <u>Cedars</u> involved substantial direct contact between the hospital and the manufacturer, the only contacts alleged between [the manufacturer] and [the plaintiff] or her doctor took place through its product brochure, website and advertisements"); <u>Carnival Corp. v. Rolls-Royce PLC</u>, No. 08-23318-CIV-SEITZ, 2009 WL 3861450, at *3 (S.D. Fla. Nov. 17, 2009) (unpublished) (finding the plaintiffs established "direct contacts" sufficient to meet the privity requirement because they alleged that the defendants "had several significant direct contacts with [the

p]laintiff[s], that during those contacts [the defendants] made representations about the qualities and attributes of the [product at issue], and that [the p]laintiffs relied on these representations in deciding to purchase the [product]"). But see Decerbo v. Melitta United States of Am. Inc., No. 8:16-cv-850-T-17AAS, 2016 WL 7206244, at *6 (M.D. Fla. Oct. 17, 2016) (unpublished) (dismissing breach of express warranty claim without prejudice because the plaintiff failed to "attach or incorporate the allegedly offending labeling," but relying on Smith and stating the plaintiff's allegation that she "relied on representations made on the [d]efendant's packaging when deciding to purchase its flavored coffee products . . . should be sufficient to state a claim for breach of express warranty under Florida law").

Here, Plaintiffs make the following allegations in support of their claim for breach of express warranty. Defendant "warrants its CSST [system] to be free of defects related to workmanship and materials for one year from the date of installation to the original owners." Complaint at 11 ¶ 44. The Peeples "were and are the original owners of the[ H]ome with the CSST [system] installed inside." Id. ¶ 45. "At the time of the fire, the CSST [system] was less than one year old and was still under warranty . . . ." Id. ¶ 46. "As a direct and proximate cause of the defective and unreasonably dangerous condition and subsequent malfunctioning of the subject CSST [system], the Peeples have sustained permanent injury including, but not limited to, property damage to the[ H]ome and their contents therein." Id. at 12 ¶ 49. In addition, "U.S. Coastal was obligated to expend in excess of $500,000 under the Homeowners' Policy for the property damage sustained by the Peeples[,] and the Peeples sustained additional losses beyond what was covered by insurance." Id. at 12-13 ¶ 50.

For the reasons stated in Cedars and Douse, the undersigned finds that a viable claim for breach of express warranty requires, at the very least, substantial direct contacts between a plaintiff and a defendant. See Cedars, 444 So. 2d at 1070-72; Douse, 314 F. Supp. 3d at 1261-62. Here, Plaintiffs do not allege that the Peeples purchased the CSST system directly from Defendant. Nor do they allege that there were any direct communications or interactions between the Peeples and Defendant. In purchasing the CSST system and having it installed in the Home, the Peeples apparently interacted solely with third-party contractors. Plaintiffs allege that Defendant "warrants" that the CSST system is "free of defects related to workmanship and materials," Complaint at 11 ¶ 44, but the circumstances surrounding the provision of such a warranty are not set out in the Complaint. In a later count, Plaintiffs allege that Defendant made certain misleading statements in advertisements and on its website, id. at 16-18 ¶¶ 75-85, but this allegation is not incorporated in the count for breach of express warranty. Even if it were, the undersigned is not convinced that such statements would be sufficient to state a claim for breach of express warranty. See Douse, 314 F. Supp. 3d at 1262 (finding that product brochure, website, and advertisements amounted to "untargeted marketing" that does not meet the privity requirement); Davis, 2018 WL 2183885, at *6 (same).

In any event, even under the Smith standard, Plaintiffs have failed to state a cause of action for breach of express warranty. Unlike in Smith, Plaintiffs here do not allege that the Peeples relied on Defendant's statement that the CSST system is "free of defects related to workmanship and materials." Complaint at 11 ¶ 44; see Kendall v. Bos. Sci. Corp., No. 6:17-cv-1888-Orl-37GJK, 2018 WL 3910883, at *5 (M.D. Fla. Apr. 17, 2018) (unpublished) (dismissing express and implied warranty claims, noting that although the

plaintiff "allege[d] that the [d]efendant's brochures and Instructions for Use . . . provided warranties, she [did] not allege that she saw those materials, nor relied upon them" (citation omitted)); Decerbo, 2016 WL 7206244, at *6 (finding that the plaintiff's allegation that she relied on the defendant's representations when deciding to purchase its product "should be sufficient to state a claim for breach of express warranty under Florida law").[8]

To the extent the undersigned's conclusion is inconsistent with the analysis in Bob Rigby and other non-binding opinions, the undersigned respectfully declines to follow them.

### 2. Breach of Implied Warranty of Merchantability (Count IV)

"Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty [of merchantability]." Toca v. Tutco, LLC, 430 F. Supp. 3d 1313, 1325 (S.D. Fla. 2020) (alteration in original) (quoting Ocana v. Ford Motor Co., 992 So. 2d 319, 325 (Fla. 3d DCA 2008)); see also Padilla v. Porsche Cars N. Am., Inc., 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019) (recognizing that "[t]ime and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant" and collecting cases); Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) (recognizing that "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity" (citing Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 38 (Fla. 1988)). In general, a consumer who purchases a product from a third-party dealer "is not in privity with the manufacturer for purposes of enforcing an implied warranty

---

[8] As previously noted, the court in Decerbo ultimately dismissed the breach of express warranty claim for other reasons.

of merchantability." Weiss v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019) (citing Bailey v. Monaco Coach Corp., 168 F. App'x 893, 894-95 (11th Cir. 2006)). Some courts, however, have relaxed the privity requirement to allow claims for breach of implied warranty in certain circumstances, as addressed below. See Toca, 430 F. Supp. 3d at 1326 (recognizing "exceptions to the bright-line privity rule under Florida case law").

First, some courts have found that privity can be established under the third-party beneficiary rule, which provides that "a person who is not a party to a contract can enforce the terms of the contract if the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." Weiss, 418 F. Supp. 3d at 1182 (citation omitted); see also, e.g., Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (recognizing that the "[p]laintiff can pursue a claim of breach of implied warranty through third-party beneficiary law" (citation omitted)); Feldman v. BRP US, Inc., No. 17-CIV-61150, 2018 WL 8300534, at *8 (S.D. Fla. Mar. 28, 2018) (unpublished) (same, quoting Sanchez-Knutson); Ohio State Troopers Ass'n v. Point Blank Enters., Inc., No. 0:17-cv-62051-UU, 2018 WL 3109632, at *7 (S.D. Fla. Apr. 5, 2018) (unpublished) (finding that the "[p]laintiffs have also properly alleged privity as third-party beneficiaries" (citation omitted)). Pursuant to the third-party beneficiary rule, a plaintiff can establish privity of contract by alleging the following: 1) he or she purchased the product from an authorized dealer who was an agent of the manufacturer; 2) he or she was the intended consumer of the product; 3) the dealer was not the intended consumer;

and 4) the warranty was intended to benefit the consumer, not the dealer. Weiss, 418 F. Supp. 3d at 1183.[9]

Second, some courts have recognized that privity can be established if "the manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party." Ohio State Troopers, 2018 WL 3109632, at *6 (citing Glob. Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1032 (11th Cir. 2017); Cedars, 444 So. 2d at 1072 n.4)). This exception to strict privity, as applied by courts, appears to be similar to the standard set out in Cedars.

Here, the Complaint alleges as follows with regard to the claim for breach of implied warranty. "[A]t the time of its sale to the Peeples, Defendant . . . impliedly warranted that the subject CSST [system] was merchantable, including that it was fit for the ordinary purposes of transporting gas within a home, and that it could pass without objection in the trade, and that it was adequately contained, packaged, and labeled." Complaint at 13 ¶ 55. Defendant "breached the implied warranty of merchantability as it concerns the Peeples" in a number of ways, including failing to provide a CSST system that was "fit for the ordinary purposes for which it was anticipated to be used—namely as a safe method of transporting gas within a home." Id. at 14 ¶ 56; see also id. ¶¶ 57-59. "As a direct and proximate result of Defendant['s] breaches of the implied warranty of

---

[9] Other courts have declined to apply the third-party beneficiary rule to establish privity. See, e.g., Tershakovec v. Ford Motor Co., No. 17-21087-CIV, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (unpublished) (rejecting the plaintiffs' reliance on the third-party beneficiary rule to establish privity, instead following In re Takata Airbag Prod. Liab. Litig., 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016), in which the court found that the plaintiff did not state a claim for breach of implied warranty because the vehicle was not purchased directly from the automotive distributor); Padilla, 391 F. Supp. 3d at 1117-18 (relying in part on Tershakovec and rejecting the plaintiffs' argument regarding the third-party beneficiary rule). The Weiss court found Tershakovec and Padilla unpersuasive, stating that the problem with these cases is that they rely on In re Takata in which "the plaintiffs . . . did not respond to the defendant's privity argument," so "the court did not consider or analyze a fully briefed and contested third-party beneficiary argument." Weiss, 418 F. Supp. 3d at 1182-83.

merchantability . . . the Peeples suffered permanent injury including, but not limited to property damage to the[ H]ome . . . ." Id. ¶ 60. In addition, "U.S. Coastal was obligated to expend in excess of $500,000 under the Homeowners' Policy for the property damage sustained by the Peeples." Id. at 15 ¶ 61.

Plaintiffs have not stated a viable cause of action for breach of implied warranty. With regard to the third-party beneficiary rule, as noted, there is a split of authority as to whether privity can be established under this rule. The undersigned, however, need not resolve this issue because even if the third-party beneficiary rule applies, Plaintiffs' claim fails. The Complaint does not allege that the Peeples purchased the CSST system from an authorized dealer who was an agent of Defendant; that the Peeples were the intended consumers of the product; that the dealer was not the intended consumer; or that the warranty was intended to benefit the consumer, not the dealer. See Weiss, 418 F. Supp. 3d at 1183.

As to the direct-contact exception, although the Complaint alleges that Defendant "warrants its CSST to be free of defects related to workmanship and materials for one year from the date of installation to the original owners," Complaint at 11 ¶ 44,[10] this allegation does not state the basis for the claimed one-year warranty and is not sufficient to show that Defendant directly provided the Peeples with a warranty or had any other direct contact with the Peeples. The instant case is distinguishable from Ohio State Troopers, Glob. Quest, and Cedars because the manufacturer in those cases directly contacted or otherwise interacted with the consumer. See Ohio State Troopers, 2018 WL 3109632, at

---

[10] Plaintiffs make this allegation in Count III, but it is incorporated by reference in Count IV. See Complaint at 13 ¶ 52.

- 14 -

*6 (observing that the plaintiffs asserted the product contained written warranties with a response card that directed the plaintiffs to complete it and return it to the defendant and that the warranty directed the consumer to return the product to the defendant "for inspection and repair");[11] Glob. Quest, 849 F.3d at 1032 (vacating district court's grant of summary judgment in part because "a jury could find that [the manufacturers] directly issued to [the] plaintiff a unique limited express warranty that was provided and specifically negotiated as part of the purchase of the yacht they manufactured" and that the manufacturers' CEO "was directly involved in the negotiation of the purchase and limited warranty" (citing Cedars, 444. So. 2d at 1072 n.4)); Cedars, 444 So. 2d at 1072 & n.4 (finding privity because the manufacturer "made direct representations" to the consumer about the product and emphasizing that "[h]ad there been no direct contact between the two parties, [the] contention that there was no privity, and thus no liability for breach of warranties, would be correct"). As noted above, the circumstances surrounding the provision of the warranty here are unclear. There is no allegation that the Peeples engaged in negotiations with Defendant or that the Peeples had any direct contact with Defendant. See Toca, 430 F. Supp. 3d at 1326 (dismissing breach of implied warranty claim and finding that the fact that the defendants "provided the warranty certificates 'directly to' the plaintiff" was "inadequate to satisfy th[e direct-contact] exception" because "[t]he Florida cases construing and applying this exception involve a much stronger tie between the

---

[11] In Ohio State Troopers, the court initially found that the plaintiffs alleged they purchased the product from the defendant's sales representative and had thus arguably established that they "contracted with the [d]efendant." 2018 WL 3109632, at *6. The court then recognized that "even if [the p]laintiffs purchased the[ product] from third parties, 'Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party.'" Id.

purchaser-plaintiff and the manufacturer; they involved direct contact by means of actual one-on-one communication").

### 3. Consumer Fraud Under the FDUTPA (Count V)

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). To state a claim under the FDUTPA, a plaintiff must allege the following three elements: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013) (citation omitted).

> As recently recognized by a court in this district:
>
> [D]istrict courts in the Eleventh Circuit are split as to whether Rule 9(b) applies to FDUTPA claims. One line of cases holds that Rule 9(b) applies to the extent that the FDUTPA claims are based in fraud. The other line holds that 9(b) does not apply to FDUTPA claims as FDUTPA's elements are already more particularized than those of common law fraud.

State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC, No. 6:19-cv-1837-Orl-41LRH, 2020 WL 2630226, at *6 (M.D. Fla. May 22, 2020) (unpublished) (citations omitted).

> Rule 9(b) provides as follows:
>
> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). The requirements of Rule 9(b) are satisfied if a complaint alleges: "(1) precisely what statements were made in what documents or oral representations or what omissions were made[;] . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same[;] . . . (3) the content of such statements and the manner in which they misled the

- 16 -

plaintiff[;] and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

Here, Plaintiffs allege that Defendant "is aware of lightning-induced arcing events that have caused perforations" in their CSST systems (sold under the brand names "Counter[S]trike" and "Counter[S]trike II"). Complaint at 16 ¶¶ 72-73. According to Plaintiffs, Defendant "has engaged in [an] advertisement campaign through print media and the internet that is intended to tout its Counter[S]trike products as lightning-resistant so that contractors will continue to use the product." Id. ¶ 74. The Complaint sets forth statements made in three of Defendant's advertisements and one representation made on Defendant's website. See id. at 16-18 ¶¶ 75-85, Exs. A to D (Doc. Nos. 3-1 to 3-4) (copies of advertisements and webpage). For example, Plaintiffs assert that an advertisement that has run since 2011 contains "a purported quote from a local contractor [that states] as follows, 'The main reason we exclusively use Counter[S]trike is that Florida is the lightning capital of the world. Counter[S]trike eliminated all my concerns about lightning.'" Id. at 17 ¶¶ 82-83, Ex. D (Doc. No. 3-4).

Plaintiffs allege that Defendant "made false representations of material fact when it stated to the company that installed the subject CSST [system] at [the] Home that the subject CSST [system] was a newer, better, and safer option that would function safely during routine electrical storms." Id. at 18 ¶ 86. Plaintiffs assert that "[a]t the time [Defendant's] Counter[S]trike product was installed at the . . . [H]ome, relying upon the information that [Defendant] had published, the contractor installing the Counter[S]trike product in the . . . [H]ome told them that the Counter[S]trike product was lightning-resistant and safe." Id. ¶ 91. According to the Complaint, "[a]s a direct and proximate result of

[Defendant's] misrepresentations, [t]he Peeples did elect to have the subject CSST [system] installed in the[ ] Home and as a result have suffered the damages described [in the Complaint]." Id. at 19 ¶ 92.

Even if Rule 9(b) applies, Plaintiffs have stated a cause of action under the FDUTPA because the Complaint satisfies the heightened standard of Rule 9(b). Plaintiffs specify: 1) exactly what statements Defendant made; 2) that three of the statements were made in advertisements and one on Defendant's website; 3) the years during which the advertisements were run;[12] 4) that Defendant stated to the "company" that installed the CSST system in the Home that the product is safe around lighting; 5) that the "contractor" that installed the CSST system, relying on this statement, told the Peeples the same information; 6) that the Peeples were misled by this information; and 7) that because of the misinformation, the Peeples chose to have Defendant's CSST system installed in the Home. See id. at 16-19, Exs. A to D (Doc. Nos. 3-1 to 3-4).

Defendant relies on PB Prop. Mgmt. v. Goodman Mfg. Co., No. 3:12-cv-1366-J-20JBT, 2013 WL 12172912 (M.D. Fla. Aug. 28, 2013) (unpublished), but such reliance is unconvincing. In PB Prop. Mgmt., the plaintiff purchased, through a third-party distributor, a number of faulty air conditioning units manufactured by the defendants. Id. at *1. The plaintiff brought a claim under the FDUTPA, alleging that the defendants' website and a press release contained misrepresentations regarding the quality of their products. Id. The defendants moved to dismiss the FDUTPA claim on the ground that the plaintiff had failed to plead the claim with sufficient particularity. Id. at *6. The court noted that there is a split

---

[12] The Complaint does not allege the exact date on which the allegedly fraudulent representation was made on Defendant's website. In light of the particularity in which the overall claim is alleged, however, this does not change the undersigned's recommendation.

of authority as to whether FDUTPA claims are subject to the Rule 9(b) heightened pleading requirement, but it found that "the Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements." Id. (citation omitted). Finding the plaintiff's FDUTPA claim was grounded in fraud, the court applied Rule 9(b). Id. The court concluded that the plaintiff failed to plead its FDUTPA claim with particularity, observing that the complaint did not allege "with specificity the time at which [the misrepresentations] occurred," such as "when [the p]laintiff viewed the alleged misrepresentations on [the d]efendants' website, or even whether it—or any other consumer—viewed them at all before purchasing the allegedly defective products." Id. at *7.

The instant case is distinguishable from PB Prop. Mgmt. Here, the Complaint asserts with sufficient particularity the time the alleged misrepresentations were made by indicating the years during which the advertisements containing the statements ran. Additionally, in PB Prop. Mgmt., there was no allegation that the third-party distributor read the misrepresentations on the website and then communicated them to the plaintiff. See Class Action Complaint and Demand for Jury Trial (Doc. No. 1), filed December 19, 2012 in PB Prop. Mgmt., No. 3:12-cv-1366-J-20JBT. As noted, Plaintiffs here allege that Defendant stated to the "company" that installed the CSST system in the Home that the product was safe around lighting. Complaint at 18 ¶ 86. Then, the "contractor" that installed the product, relying on this statement, told the Peeples the same information. Id. ¶ 91.

Because Plaintiffs have stated a FDUTPA claim upon which relief may be granted, the Court need not address Defendant's argument regarding Plaintiffs' request for attorney's fees.

## V. Conclusion

The undersigned has fully evaluated Plaintiffs' claims. Although they have sufficiently alleged their FDUTPA claim, at this juncture, they have not stated viable claims against Defendant for breach of express and implied warranties. For all of the foregoing reasons, it is

**RECOMMENDED**:

1. That Omega Flex, Inc.'s Rule 12 Motion to Dismiss Counts III, IV, and V of Plaintiffs' Complaint and Motion to Strike Plaintiffs' Demand for Attorney's Fees (Doc. No. 7) be **GRANTED in part** and **DENIED in part**.

2. That the Motion be **GRANTED** to the extent that Counts III and IV be **DISMISSED without prejudice**.

3. That the Motion be otherwise **DENIED**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 31, 2020.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record